**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

DWAYNE BACON,

                       Plaintiff,

      v.                                          No. 9:15-CV-1502
                                                             (DNH/CFH)

MR. PHELPS and MR. P. SHIPMAN,

                       Defendants.

---

| | |
|---|---|
| **APPEARANCES:** | **OF COUNSEL:** |
| DWAYNE BACON<br>44513-007<br>McKean Federal Correctional Institution<br>Inmate Mail/Parcels<br>P.O. Box 8000<br>Bradford, Pennsylvania 16701<br>Plaintiff pro se | |
| RICHARD S. HARTUNIAN<br>Office of the United States Attorney<br>P.O. Box 7198<br>100 S. Clinton Street<br>Syracuse, New York 13261-7198<br>Attorney for Defendant | CHARLES E. ROBERTS, ESQ. |

**CHRISTIAN F. HUMMEL,**
**U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER[1]

Plaintiff Dwayne Bacon ("Bacon") brings this action pursuant to <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), against the above-listed federal defendants for violations of his constitutional rights. Dkt. No. 21 ("Sec. Am.

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Compl."). Bacon contends that defendants Captain Phelps ("Phelps")[2] and S.I.S. Lieutenant P. Shipman ("Shipman") deprived him of his constitutional rights under the First and Fourteenth Amendments. Id. In lieu of an answer, Shipman moves, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the complaint. Dkt. No. 24. Bacon has submitted a response to the motion in which he indicates that he does not oppose the motion. Dkt. No. 26. For the following reasons, it is recommended that defendants' motion to dismiss be granted.

## I.  BACKGROUND

### A.  Facts[3]

The facts are related herein in the light most favorable to Bacon as the non-moving party. See subsection II(A) infra. At the relevant time, Bacon was confined at Federal Correctional Institution ("FCI") Ray Brook, which is part of the United States Bureau of Prisons ("BOP"). Sec. Am. Compl. at 1. On March 6, 2015, at approximately 12:00 P.M., Shipman interviewed Bacon as part of an investigation regarding a letter Bacon wrote to his sister. Sec. Am. Compl. at 2; Dkt. No. 1 at 10. In the letter, Bacon stated, "there is only one black woman here. I believe she is an Indian. She is very beautiful and healthy. I do want her but I want a few other women as well." Sec. Am. Compl. at 2. Bacon admitted writing the letter about Officer Ferland. Dkt. No. 1 at 10. That day, Shipman placed Bacon in the Special Housing Unit ("SHU"). Id.

---

[2]  Bacon originally sued Phelps as "Philips." See Dkt. No. 7.

[3]  Bacon annexed exhibits to his original complaint. Dkt. No. 1 at 11-16. Defendant does not contest the validity of these exhibits and argues that the records "are sufficient to resolve this matter." Dkt. No. 24-1 at 3, n. 3.

On March 11, 2015, Phelps told Bacon that he would receive an Incident Report and a disciplinary transfer. Sec. Am. Compl. at 2. On March 19, 2015, Bacon received an Incident Report, issued by Shipman, that charged Bacon with Prohibited Act Code 206 - "making proposals or threats to another." Id.; Dkt. No. 1 at 10. Shipman reported that, after an investigation, it was determined that Bacon made "indirect sexual threats toward the safety of Officer Ferland." Dkt. No. 1 at 10.

On March 23, 2015, a disciplinary hearing was conducted. Dkt. No. 1 at 11. Bacon did not request a staff representative or witnesses. Id. He stated that he received the Incident Report and understood his rights. Id. Bacon admitted to writing the letter but argued that he did not threaten the officer. Id. He claimed, "that is how he and his sister speak to each other to make them laugh." Id. Bacon was found guilty of the charges in the Incident Report. Dkt. No. 1 at 11. Bacon was sentenced to thirty days in the SHU, a ninety-day loss of privileges, a twenty-seven-day loss of good time, and a disciplinary transfer. Id. at 12. On March 25, 2015, Bacon filed an appeal, arguing that there was no evidence to support the allegations. Id. at 13.

On May 5, 2015, Regional Director J.L. Norwood ("Norwood")[4] issued a Response noting that a review of Bacon's appeal, "revealed questions concerning the disciplinary process." Dkt. No. 1 at 14. The matter was remanded for further proceedings. Id. On May 14, 2015, while Bacon was awaiting information regarding further proceedings, he was transferred to USP Canaan. Id. Bacon remained there for twenty days and then was transferred to FCI McKean. Id.; Sec. Am. Compl. at 4. On July 22, 2015, Norwood

---

[4]     Norwood is not a named defendant herein.

3

reversed the disciplinary sanctions, finding "questions concerning the evidence relied upon." Dkt. No. 1 at 16.  The sanctions were expunged from Bacon's record.  Id.

Bacon alleges that Shipman and Phelps retaliated against him in violation of his First Amendment right to free speech.  See Sec. Am. Compl.  Specifically, Bacon claims that Shipman issued the Incident Report and placed him in SHU confinement in retaliation for his writing a letter to his sister.  Id. at 2, 4.  Bacon also alleges that Phelps threatened and transferred him in retaliation for exercising his First Amendment right.  Id. at 2-3. Construing the second amended complaint liberally, Bacon also claims that his due process rights were violated because he was held for "a total of 89 days in isolated confinement for an improper purpose."  Id. at 5.

## II.  DISCUSSION[5]

Shipman moves to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6), arguing that Bacon's First and Fourteenth Amendment claims fail to state a cause of action.  Dkt. No. 24.  Specifically, Shipman argues: (1) Bacon failed to state a claim of retaliation; (2) Bacon failed to allege that Shipman was personally involved in any alleged constitutional violation; (3) Bacon failed to state a claim for a violation of due process; and (4) Shipman is protected by qualified immunity.  Id.

### A.  Legal Standard

When considering a motion to dismiss, "a court must accept the allegations contained

---

[5] All unpublished opinions cited to by the Court in this Report–Recommendation and Order are, unless otherwise noted, have been provided to plaintiff.

4

in the complaint as true, and draw all reasonable inferences in favor of the non-movant." Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994). However, this "tenet" "is inapplicable to legal conclusions [; thus, t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(citing Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007) (holding that " labels and conclusions or a formulaic recitation of the elements of a cause of action will not do" and "courts are not bound to accept as true a legal conclusion couched as a factual allegation.")).

To defeat a motion to dismiss or a motion for judgment on the pleadings, a claim must include "facial plausibility . . . that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556)(explaining that the plausibility test "does not impose a probability requirement . . . it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct] .")); see also Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009) (holding that, "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible on its face.") (citations omitted)). Still, "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Twombly, 550 U.S. at 555 (citations omitted). Although a complaint attacked under the standard set forth in Rule 12(b)(6) does not require detailed factual allegations, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (citations omitted).

5

Bacon did not oppose defendant's motion to dismiss. Dkt. No. 26. Thus, defendant's burden "has been lightened such that, in order to succeed on [his] argument, [he] need only show that the argument possesses facial merit, which has appropriately been characterized as a 'modest' burden." Taedger v. New York, No. 12-CV-0549 (GTS/RFT), 2013 WL 5652488, at *4 (N.D.N.Y. Oct. 15, 2013) (citing N.D.N.Y.L.R. 7.1(b)(3)); see also Sledge v. Kooi, No. 9:04-CV-1311(TJM/GHL), 2007 WL 951447, at *5 (N.D.N.Y. Feb. 12, 2007) (finding that the plaintiff consented to the validity of the defendant's argument by failing to oppose it, and, thus, the movant's burden to dismiss is a lightened burden of persuasion than a contested motion for dismissal).

### B. First Amendment

Shipman argues that Bacon failed to state a claim for retaliation because Bacon did not engage in speech that could be construed as "protected conduct." Dkt. No. 24-1 at 10-12. As noted, Bacon did not oppose this argument. Dkt. No. 26. To state an actionable claim for retaliation under the First Amendment, a prisoner must establish by a preponderance of the evidence that: (1) the speech or conduct at issue was protected; (2) the defendant took adverse action against the plaintiff; and (3) there was a causal connection between the protected speech and the adverse action. Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004) (internal quotation marks and citation omitted); Tafari v. McCarthy, 714 F.Supp. 2d 317, 347 (N.D.N.Y. 2010). The Second Circuit has stated that courts must approach prisoner retaliation claims "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation – can be characterized as a

constitutionally proscribed retaliatory act." Dawes v. Walker, 239 F.3d 489 491 (2d Cir. 2001), overruled on other grounds by Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002) (citing Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983)); Franco v. Kelly, 854 F.2d 584, 590 (2d Cir. 1988).

In the second amended complaint, Bacon alleged that his letter to his sister amounted to "protected conduct" – exercising his First Amendment right to freedom of speech. See Sec. Am. Compl. at 2.  "While mailing a letter is constitutionally protected conduct," in this case, the disciplined conduct was not the fact that he wrote a letter, but that the letter contained what was perceived as a sexual threat against a prison employee, which is "separate and distinct from [the plaintiff's] conduct in the exercise of free speech." Allmon v. Wiley, No. 08-CV-01183, 2011 WL 4501941, at *8 (D. Colo. Aug. 25, 2011) aff'd, 483 F. App'x 430 (10th Cir. 2012) (holding that the plaintiff "suffered adverse action because he violated prison rules and attempted to file a fraudulent lien, not because he mailed a letter"); Chevalier v. Schmidt, 11-CV-788 (JTC), 2012 WL 6690313, at *3 (W.D.N.Y. Dec. 21, 2012) (citing Allah-Kaseim v. Distrowicz, 09 Civ. 9665 (DLC), 2012 WL 2912930, at *9 (S.D.N.Y. July 17, 2012) ("Vulgar, insulting, and threatening statements have been found not to be protected speech for purposes of the First Amendment.") (additional citations omitted)). The facts, as pleaded in the second amended complaint, do not plausibly suggest that Bacon's sexual comments regarding a female prison guard were protected under the First Amendment.  See Jackson v. Onondaga Ctny., 549 F.Supp .2d 204, 215 (N.D.N.Y. 2008) (citing Brooks v. Miles, 210 F.Supp. 2d 290 (S.D.N.Y. 2001) (noting that "profane" or disrespectful language spoken by an inmate against a prison guard is not protected under the First Amendment)); see also Jermosen v. Coughlin, 878 F. Supp. 444, 451 (N.D.N.Y.

7

1995) (noting that abusive or threatening language is not protected under the First Amendment).

Indeed, even if such speech could fall under any First Amendment protections, a prison facility has legitimate penological interest in prohibiting such conduct, as permitting the use of sexual language or discussion of sexual desires relating to a prison employee could pose a risk to that employee or others. See, e.g., Chevalier, 2012 WL 66903313, at *3 ("Legitimate penological interests in rehabilitation and preserving institutional authority permit prison officials to discipline inmates who engage in harassing and insulting behavior even when inmates are taking part in otherwise protected activities."). Thus, Bacon's claim fails on the first prong of the analysis, as his speech was not "protected." Gill, 389 F.3d at 380.

Moreover, where a prisoner's conduct violates a reasonable prison rule or regulation, he has not engaged protected conduct and cannot state a constitutional claim if he is disciplined for violating that rule or regulation by engaging in such prohibited conduct. See, e.g., Shaheen v. McIntyre, No. 9:05-CV-0173, 2007 WL 3274835, at *10 (N.D.N.Y. Nov. 5, 2007) ("[I]t is rather well settled that '[t]he violation of a prison regulation . . . is not protected conduct.'") (citation omitted); Couch v. Mathena, No. 7:08-CV-00518, 2009 WL 233547, at *2 (W.D. Va. Jan. 30, 2009), aff'd, 339 F. App'x 352 (4th Cir. 2009) ("[P]rison regulations are allowed to infringe on prisoner's rights as long as they are reasonably related to legitimate penological interests.") (citing Turner v. Safley, 482 U.S. 78, 89 (1987)). Here, Bacon was charged with violating Code 206.[6]  Because the SHU placement was premised

---

[6] Code 206 provides that sexual proposals or threats to another constitute a "high severity level prohibited act." See 28 C.F.R. § 541.3. Indeed, even an inmate's proposal of consensual sex is a prohibited

8

on Bacon's violation of a prison regulation, his retaliation claims are subject to dismissal. See Singleton v. Caron, No. 9:03-CV-0455 (GLS/DEP), 2005 WL 2179402, at *10 (N.D.N.Y. Sept. 8, 2005) (dismissing retaliation claim because the cell search was the result of the plaintiff's engaging in sexual activity in the presence of a female corrections officer, which was a violation of prison disciplinary rules); see also Moore v. Schuetzle, 486 F.Supp. 2d 969, 987 (D.N.D. 2007) (dismissing the plaintiff's retaliation claims because the plaintiff wrote a letter to a female correctional officer soliciting sexual contact and made sexually explicit statements toward another corrections officer claiming that the officer made sexual advances toward the plaintiff), aff'd as modified 289 F. App'x 962 (8th Cir. 2008).[7]

As stated, Bacon has "consented" to defendant's argument under N.D.N.Y.L.R. 7.1(b)(3). Thus, the only remaining issue is whether defendant has met his burden "to demonstrate entitlement to the relief requested." Id. Under the circumstances, the undersigned finds that defendant has met this lightened burden. Accordingly, it is recommended that defendant's motion to dismiss be granted on this ground.[8]

---

under Code 206. See, e.g., Borker v. Baltazar, No. 1:CV-14-0197, 2014 WL 5020602, at *3 (M.D. Pa. Oct. 8, 2014).

[7] Although the decision of the Disciplinary Hearing Officer was ultimately expunged, Bacon was not engaged in constitutionally-protected conduct at the time of the alleged adverse actions, and, thus, his retaliation claims cannot withstand defendant's motion. See Lindell v. O'Donnell, No. 05-C-04, 2005 WL 2740999, at *29 (W.D. Wisc. Oct. 21, 2005) (dismissing retaliation claim because the plaintiff was not engaged in a constitutionally-protected activity at the time the defendant issued a conduct report.); see also Player v. Salas, No. 04-CV-1761, 2007 WL 2781102, at *5 (S.D. Cal. Sept. 21, 2007) (holding that the fact that the disciplinary action taken against the plaintiff was subsequently reversed, the reversal does not support the conclusion that the defendant lacked a legitimate penological goal in submitting the incident report).

[8] As the undersigned recommends dismissal of the second amended complaint based on its failure to state a claim, the undersigned declines to address the defendant's alternative argument regarding personal involvement.

### C. Due Process

Defendant argues that Bacon failed to state a claim for a violation of his due process rights under the Fourteenth Amendment. Dkt. No. 24-1 at 14. The Due Process Clause of the Fourteenth Amendment states that "[n]o State shall . . . deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV § 1. Significantly, due process "does not protect against all deprivations of liberty. It protects only against deprivations of liberty accomplished without due process of the law." Baker v. McCollan, 443 U.S. 137, 145 (1979) (internal quotation and citations omitted). An inmate asserting a violation of his or her right to due process must establish the existence of a protected interest in life, liberty, or property. See Perry v. McDonald, 280 F.3d 159, 173 (2d Cir. 2001). This standard requires a prisoner to establish that the deprivation was "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir.1999) (citation omitted); Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir. 1996). In determining whether Bacon's SHU confinement violated his due process rights, the Court must consider: "'(1) whether the plaintiff had a protected liberty interest in not being confined . . . and, if so; (2) whether the deprivation of that liberty interest occurred without due process of law.'" Tellier v. Fields, 280 F.3d 69, 79-80 (2d Cir. 2000) (quoting Sealey v. Giltner, 116 F.3d 47, 51 (2d Cir. 1997)).

### 1. Liberty Interest

An inmate has a protected liberty interest in being free from segregated confinement if he can make a threshold showing that the deprivation of which he complains imposed the

10

requisite atypical and significant hardship. See Sandin v. Connor, 515 U.S. 472, 483-84 (1995); Tellier, 280 F.3d at 80 (quoting Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir. 1996)). The Court considers "(1) the effect of disciplinary action on the length of prison confinement; (2) the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions; and (3) the duration of the disciplinary segregation imposed compared to discretionary confinement." Wright v. Coughlin, 132 F.3d 133, 136 (2d Cir. 1998) (citing Sandin, 515 U.S. at 484)). Although not dispositive, the duration of a disciplinary confinement is significant in determining atypicality. Colon v. Howard, 215 F.3d 227, 231 (2d Cir. 2000) (citations omitted). No firmly established, bright-line rule exists to determine the length or type of sanction that rises to the level of atypical and significant hardship. Wilkinson v. Austin, 545 U.S. 209, 223 (2005) (citations omitted). Instead, the Second Circuit has provided a general guideline: "[w]here the plaintiff was confined for an intermediate duration — between 101 and 305 days — 'development of a detailed record' of the conditions of confinement relative to ordinary prison conditions is required." Palmer v. Richards, 364 F.3d 60, 64-65 (2d Cir. 2004) (quoting Colon, 215 F.3d at 232)). In the absence of a dispute about the conditions of confinement, summary judgment may be issued "as a matter of law." Id. at 65 (citations omitted). Conversely, where an inmate is confined under normal SHU conditions for a duration in excess of an intermediate disposition, the length of the confinement itself generally is sufficient to establish atypicality. Id. (citing Colon, 215 F.3d at 231-32).

    Here, Bacon alleges that he was held in "isolated confinement" for eighty-nine days,

11

which is less than an "intermediate duration of time."[9] As such, the length of time itself cannot determine that the confinement was atypical and significant. Id. Therefore, the Court must determine if his confinement is atypical and significant by comparing the conditions of his segregated confinement with ordinary prison conditions. Bacon only asserts that he was "isolated" while in SHU. This claim falls short of establishing a liberty interest as Bacon fails to allege any particular condition or deprivation. See Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir. 1996) (explaining that although prisoners in SHU may be deprived of "certain privileges that prisoners in the general population enjoy," there exists no liberty interest in remaining a part of the general prison population). Accordingly, the undersigned concludes that plaintiff's time in SHU was not an atypical or significant hardship, and, thus, plaintiff has failed to establish a protected liberty interest in this period of SHU confinement.

### 2. Procedural Due Process

Even assuming, *arguendo*, that Bacon pleaded a protected liberty interest, he has failed to demonstrate that such deprivation occurred without due process of law. The due process protections afforded an inmate do not equate to "'the full panoply of rights' due to a defendant in a criminal prosecution." Sira v. Morton, 380 F.3d 57, 69 (2d Cir. 2004) (quotation omitted).

> Nevertheless, an inmate is entitled to advance written notice of
> the charges against him; a hearing affording him a reasonable

---

[9] The Court previously held, "based upon the facts set forth in the complaint, the only period attributable of segregated confinement, if at all, to defendants Philips and Shipman is the period of time that Bacon spent in SHU awaiting his disciplinary hearing – a period of 17 days." Dkt. No. 6 at 11.

12

> opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken.

Id. (citing Wolff v. McDonnell, 418 U.S. 556, 563-67 (1974)).

Bacon does not allege that Shipman presided over his disciplinary hearing. Moreover, the second amended complaint lacks any facts suggesting that Bacon suffered any constitutional deprivation during that hearing. Bacon does not claim that he received inadequate notice, that he was denied an opportunity to be heard at a hearing, that he was precluded from presenting witnesses or evidence at any hearing, or that the hearing determination was not supported by some evidence. See generally Sec. Am. Compl. Thus, Bacon fails to sufficiently plead a claim that Shipman violated his Fourteenth Amendment procedural due process rights. Accordingly, it is recommended that defendant's motion to dismiss be granted on this ground.

### D. Qualified Immunity

Defendant argues that even if Bacon's claims are substantiated, he is nevertheless entitled to qualified immunity. Dkt. No. 24-1 at 14-15. Qualified immunity generally protects government officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F.Supp. 2d 211, 229-30 (N.D.N.Y. 2002), aff'd 80 F. App'x 146 (2d Cir. 2003). However, even if the constitutional privileges "are so clearly defined that a reasonable public official would know that his actions might violate those rights, qualified . . . immunity might still be available . . .

13

if it was objectively reasonable for the public official to believe that his acts did not violate those rights." Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367(2d Cir. 1990) (internal citation omitted)).

A court must first determine whether, if Bacon's allegations are accepted as true, there would be a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). Only if there is a constitutional violation does a court proceed to determine whether constitutional rights were clearly established at the time of the alleged violation. Aiken, 236 F.Supp.2d at 230. Here, the second prong of the inquiry need not be addressed with respect to Bacon's claims against Shipman because, as discussed supra, it has not been shown that Shipman violated Bacon's First and Fourteenth Amendment rights. Accordingly, Shipman is entitled to qualified immunity, and, in the alternative, it is recommended in the alternative that defendant's motion be granted on this ground.

### E.  Service on defendant Phelps

In the original complaint, Bacon identified defendant Phelps as "Philips." See generally Dkt. No. 1. On June 20, 2016, the Clerk of the Court issued summonses for Shipman and "Philips." Dkt. No. 11. On July 25, 2016, the Court received correspondence from the BOP advising that "Captain Philips" may be "Captain Phelps" and that Phelps was no longer employed at FCI Ray Brook. Dkt. No. 14. On July 25, 2016, the Court received a Waiver of Service on behalf of Shipman. Dkt. No. 15. On September 20, 2016, the Court directed the Clerk to forward a copy of the BOP notice to Bacon with his amended complaint. Dkt. No. 20. Bacon was instructed as follows:

> If plaintiff believes that Captain Phelps is the person he

14

> intended to name as a defendant, he may amend his Amended Complaint by handwriting Phelps' name in the appropriate locations throughout on the copy of the Amended Complaint and indicate in the caption of the pleading that it is the second amended complaint. Once plaintiff has made these changes, he should sign the proposed second amended complaint and submit it to the Court for review.

Dkt. No. 20.

On September 29, 2016, Bacon filed his second amended complaint naming Phelps as a defendant. Dkt. No. 21. On October 6, 2016, the Court issued an Order directing the Clerk of the Court to complete a waiver of service of process form for Phelps and provide it to the United States Marshals to serve the form, together with the second amended complaint, on Phelps. Dkt. No. 22. The Court further directed the Clerk to issue summonses and forward them, along with copies of the second amended complaint, to the United States Marshals, for service on the United States Attorney for the Northern District of New York and the Attorney General of the United States in Washington, D.C., in accordance with Rule 4(i) of the Federal Rules of Civil Procedure. Id. To date, Phelps has not been served. Dkt. No. 24-1 at 6, n.4.

Under Valentin v. Dinkins, 121 F.3d 72, 75-76 (2d Cir.1997), a pro se litigant is entitled to assistance from the district court in identifying a defendant for service of process. Although the second amended complaint provides the name of the defendant, the Marshals Service has been unsuccessful in its attempts to effectuate service. In addition, Bacon is no longer incarcerated at FCI Ray Brook. In the Memorandum of Law in Support of Shipman's Motion to Dismiss, counsel for Shipman advises that once Phelps is served, "he will make a motion to dismiss that is largely identical to the one at bar." Dkt. No. 24-1 at 6, n.4. Accordingly, the Court instructs the United States Attorney's Office to advise the Court

15

whether it is representing Phelps and, if so, whether Phelps waives service of summons.  If the United States Attorney's Office is not representing Phelps or if he declines to waive service, the Court instructs the United States Attorney's Office to provide the full name of the defendant and an address where the defendant can currently be served.[10]

### III. CONCLUSION

**WHEREFORE**, based on the findings set forth above, it is hereby:

**RECOMMENDED**, that Shipman's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. No. 24) be **GRANTED**; and it is further

**ORDERED**, that the United States Attorney's Office shall, within thirty (30) days of the filing date of this Report-Recommendation and Order, advise the Court of whether it is representing Phelps and, if so, whether Phelps consents to waiver of service.  If the United States Attorney's Office is not representing Phelps, or if Phelps does not consent to waiver of service, the United States Attorney's Office shall provide the Court with the information specified above, within thirty (30) days of the filing date of this Report-Recommendation and Order.  The information should be sent to the Clerk of the Court for the Northern District of New York along with a copy of this Decision and Order, as well as to plaintiff Dwayne Bacon at his address of record.  Once this information is provided, the Clerk shall return this file to the Court for further review; and it is further

**ORDERED**, that copies of this Report-Recommendation and Order be served on the

---

[10] Because the failure to serve the defendant within the 120 days contemplated by Federal Rule of Civil Procedure 4(m) is not the result of Bacon's lack of effort, the Court finds that good cause has been shown to extend the date of service.  FED. R. CIV. P. 4(m).

parties in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1( c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Services, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); F ED. R. C IV. P. 6(a), 6(e), 72.

**IT IS SO ORDERED.**

Dated: July 6, 2017
Albany, New York

*Christian F. Hummel*
Christian F. Hummel
U.S. Magistrate Judge