**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

DWAYNE BACON,

                              Plaintiff,

              v.                                             No. 9:15-CV-1502
                                                             (DNH/CFH)

MR. PHELPS,

                              Defendant.

---

**APPEARANCES:**                              **OF COUNSEL:**

Dwayne Bacon
44513-007
McKean Federal Correctional Institution
Inmate Mail/Parcels
P.O. BOX 8000
Bradford, Pennsylvania 16701
Plaintiff pro se

Grant C. Jaquith                              CHARLES E. ROBERTS, ESQ.
Office of the United States Attorney          Assistant United States A
P.O. Box 7198
100 South Clinton Street
Syracuse, New York 13261-7198
Attorney for Defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

        Plaintiff pro se Dwayne Bacon ("plaintiff"), an inmate who was, at all relevant times,

in the custody of the Federal Bureau of Prisons ("BOP"), brings this action pursuant to

---

[1] This matter was referred to the undersigned for Report-Recommendation and Order pursuant to
28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), against Captain Phelps for violations of his constitutional rights under the First and Fourteenth Amendments. Dkt. No. 21 ("Sec. Am. Compl."). Presently pending before the Court is defendant's Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). Dkt. No. 34. Plaintiff opposed the motion, and defendant filed a reply. Dkt. Nos. 38, 39. For the reasons that follow, it is recommended that defendant's motion be granted.

## I. Background

### A. Facts

The facts are reviewed in the light most favorable to plaintiff as the non-moving party. See subsection II(A) infra. At all relevant times, plaintiff was confined at Federal Correctional Institution ("FCI") Ray Brook, which is part of the United States BOP. Sec. Am. Compl. at 1. On March 6, 2015, Lt. Shipman interviewed plaintiff in connection with an investigation concerning a letter that plaintiff wrote to his sister. Sec. Am. Compl. at 1; Dkt. No. 1 at 10. In the letter, plaintiff stated, "there is only one black woman here. I believe she is an Indian. She is very beautiful and healthy. I do want her but I want a few other women as well." Sec. Am. Compl. at 2. Plaintiff admitted that he wrote the letter about non-party Officer Ferland. Dkt. No. 1 at 10. Shipman placed plaintiff in the Special Housing Unit ("SHU"). Id. On March 11, 2015, Capt. Phelps informed plaintiff that he would receive a "shot," or incident report, and a disciplinary transfer. Sec. Am. Compl. at 2. On March 19, 2015, plaintiff received an incident report charging him with Prohibited Act

2

Code 206 – "making proposals or threats to another." Id.; Dkt. No. 1 at 10.  The incident report stated that, "[a]lthugh inmate Bacon did not directly state this to Officer Ferland, he still made an indirect sexual threat toward the safety of Officer Ferland." Dkt. No. 1 at 10.

A disciplinary hearing commenced on March 23, 2015.  Dkt. No. 1 at 11.  Plaintiff did not request witnesses or a staff representative, and stated that he received the incident report and understood his rights.  Id.  Plaintiff admitted to writing the letter, but claimed that it was not a direct threat toward the officer.  Id.  He stated, "this is how he and his sister speak to each other to make them laugh." Id.  The Discipline Hearing Officer ("DHO") found plaintiff guilty, and sentenced him to thirty days in SHU, a ninety-day loss of privileges, a twenty-seven-day loss of good time, and a disciplinary transfer.  Id. at 12.  On March 25, 2015, plaintiff filed an administrative appeal.  Id. at 13.  On May 5, 2015, the regional director issued a response, stating that the review of plaintiff's appeal "revealed questions concerning the disciplinary process," and the matter was remanded for further proceedings.  Id. at 14.  On May 14, 2015, plaintiff was transferred to USP Canaan where he remained for twenty days before his transfer to FCI McKean.  Id.; Sec. Am. Compl. at 4.  On July 22, 2015, the regional director reversed the disciplinary sanctions against plaintiff due to "questions concerning the evidence relied upon." Dkt. No. 1 at 16.  The sanctions were expunged from plaintiff's disciplinary record.  Id.

## B. Procedural History

On December 18, 2015, plaintiff filed a complaint against "Warden Langford, Captain Philips, and Lieutenant Shipman," as well as other miscellaneous staff members.

3

See generally Dkt. No. 1.  On March 14, 2016, Hon. David. N. Hurd, United States District Court Judge, issued a Decision and Order dismissing *sua sponte* plaintiff's false misbehavior report claims against defendants Philips and Shipman with prejudice. Dkt. No. 6 at 8-9.   Judge Hurd dismissed plaintiff's claims against Warden Langford for lack of personal involvement.  Id. at 8.  Judge Hurd also dismissed plaintiff's due process and conditions of confinement claim without prejudice.  Id. at 9-14.  To the extent that plaintiff requested his immediate release from incarceration, the Court also dismissed that claim without prejudice.  Id. at 14-15.  Judge Hurd directed plaintiff to timely file an amended complaint if he wished to proceed with the matter.  See generally id.

On April 14, 2016, plaintiff filed an amended complaint. Dkt. No. 7.  Plaintiff alleged that defendants retaliated against him for exercising his First Amendment rights.  See generally id.  On May 18, 2016, Judge Hurd issued a Decision and Order dismissing all claims against Warden Langford with prejudice.  Dkt. No. 10 at 3-5.  Plaintiff's remaining Bivens claims against defendants Philips and Shipman were accepted for filing.  Id. at 5-6. On September 20, 2016, the undersigned allowed plaintiff to amend his complaint to substitute defendant Capt. Phelps for Capt. Phillips. Dkt. No. 20.  On September 29, 2016, plaintiff filed a second amended complaint against P. Shipman and Phelps.  See generally Sec. Am. Compl.  The Court reviewed plaintiff's second amended complaint, and accepted it for filing.  Dkt. No. 22.  The Court noted that aside from the name substitution, it was "in all other respects identical to the Amended Complaint."  Id.

Plaintiff alleged that Lt. Shipman placed him in the SHU and wrote a false misbehavior report against him in retaliation for exercising his First Amendment rights.

4

Sec. Am. Compl. at 3. Plaintiff further alleged that Capt. Phelps (1) threatened plaintiff that he would receive an incident report and a disciplinary transfer for writing the letter; and (2) ignored the regional director's orders and proceeded with the threat assessment process to have plaintiff transferred in retaliation for plaintiff's exercise of his First Amendment rights. See Sec. Am. Compl. at 3-5.

The second amended complaint was only served on Lt. Shipman, and the summons returned unexecuted as to Capt. Phelps. Dkt. Nos. 17, 18. The Office of the United States Attorney filed a motion to dismiss on behalf of Lt. Shipman. Dkt. No. 24. The moving papers acknowledged that "[o]nce Captain Phelps is served, he will make a motion to dismiss that is largely identical to the one at bar." Id. at 6 n.4. Plaintiff filed a notice stating that he would not oppose the motion. Dkt. No. 26. On July 6, 2017, the undersigned issued a Report-Recommendation and Order recommending that the motion to dismiss (Dkt. No. 24) be granted. Dkt. No. 28. As to plaintiff's First Amendment retaliation claim against Lt. Shipman, the undersigned found that "[t]he facts, as pleaded in the second amended complaint, do not plausibly suggest that [plaintiff's] sexual comments regarding a female prison guard were protected under the First Amendment." Dkt. No. 28 at 7 (citing Jackson v. Onondaga Ctny., 549 F. Supp. 2d 204, 215 (N.D.N.Y. 2008)). Moreover, even if the speech contained in plaintiff's letter was protected by the First Amendment, the undersigned found that "the prison facility ha[d] legitimate penological interest in prohibiting such conduct[.]" Id. at 8. Lastly, the undersigned found "where a prisoner's conduct violates a reasonable prison rule or regulation, he has not engaged protected conduct and cannot state a constitutional claim if he is disciplined for violating that rule or regulation by

5

engaging in such prohibited conduct." Id. at 8. Thus, plaintiff failed to demonstrate that Lt. Shipman violated his First Amendment rights. See id.

As to plaintiff's Fourteenth Amendment due process claim against Lt. Shipman, the undersigned concluded that plaintiff failed to establish a protected liberty interest in his SHU confinement as his time in SHU was not an atypical or significant hardship. See Dkt. No. 28 at 12. The undersigned also concluded that the second amended complaint "lack[ed] any facts suggesting that [plaintiff] suffered any constitutional deprivation during [his disciplinary] hearing." Id. at 13. Thus, plaintiff failed to demonstrate that Lt. Shipman violated his Fourteenth Amendment due process rights. See id.

Capt. Phelps now moves to dismiss plaintiff's complaint against him for the same reasons as those alleged by the Court in the July 6, 2017 Report-Recommendation and Order. See Dkt. No. 34-1.

## II. Discussion[2]

### A. Legal Standard

When considering a motion to dismiss, "a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994). However, this "tenet" "is inapplicable to legal conclusions[; thus, t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v.

---

[2] All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

Iqbal, 556 U.S. 662, 678 (2009)(citing Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007) (holding that "labels and conclusions or a formulaic recitation of the elements of a cause of action will not do" and "courts are not bound to accept as true a legal conclusion couched as a factual allegation.")).

To defeat a motion to dismiss or a motion for judgment on the pleadings, a claim must include "facial plausibility . . . that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556) (explaining that the plausibility test "does not impose a probability requirement . . . it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct] .")); see also Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009) (holding that, "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible on its face.") (citations omitted)). Still, "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Twombly, 550 U.S. at 555 (citations omitted). Although a complaint attacked under the standard set forth in Rule 12(b)(6) does not require detailed factual allegations, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (citations omitted).

### B. First Amendment

Capt. Phelps argues that plaintiff failed to state a claim for retaliation because "this

Court previously concluded that plaintiff had failed to state a claim for a violation of his rights under the First Amendment, and retaliation, and that entire discussion applies to Captain Phelps with equal force." Dkt. No. 34-1 ("Def. Mem. of Law"). at 9. In opposition, plaintiff contends that the comments in his March 5, 2015 letter to his sister were in reference to women he met on "PrisonPenPals.com," and that there is no written or signed confession statement supporting defendant's allegation that he admitted that the woman he referenced was Officer Ferland. Dkt. No. 38 ("Pl. Opp.") at 2.

Courts are to "approach [First Amendment] retaliation claims by prisoners 'with skepticism and particular care[.]'" See, e.g., Davis v. Goord, 320 F.3d 346, 352 (2d Cir. 2003) (quoting Dawes v. Walker, 239 F.3d 489, 491 (2d Cir. 2001), overruled on other grounds by Swierkiewicz v. Sorema, N. A., 534 U.S. 506 (2002)). A retaliation claim under section 1983 may not be conclusory and must have some basis in specific facts that are not inherently implausible on their face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); South Cherry St., LLC v. Hennessee Group LLC, 573 F.3d 98, 110 (2d Cir. 2009). "To prove a First Amendment retaliation claim under Section 1983, a prisoner must show that '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" Espinal v. Goord, 558 F.3d 119, 128 (2d Cir. 2009) (quoting Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004), overruled on other grounds by Swierkiewicz, 534 U.S. 506 (2002)). If the plaintiff meets this burden, the defendants must show, by a preponderance of the evidence, that they would have taken the adverse action against the plaintiff "even in the absence of the protected conduct." Mount Healthy

8

City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977). "Types of circumstantial evidence that can show a causal connection between the protected conduct and the alleged retaliation include temporal proximity, prior good discipline, finding of not guilty at the disciplinary hearing, and statements by defendants as to their motives." See Barclay v. New York, 477 F. Supp. 2d 546, 558 (N.D.N.Y. 2007). In order to prove an adverse action, a plaintiff must show that the defendant's "'retaliatory conduct . . . would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights . . . . Otherwise, the retaliatory act is simply de minimis, and therefore outside the ambit of constitutional protection.'" Roseboro v. Gillespie, 791 F. Supp. 2d 353, 366 (S.D.N.Y. 2011) (quoting Dawes, 239 F.3d at 292-93).

Plaintiff claims that the March 5, 2015 letter he sent to his sister amounted to an exercise of his First Amendment right to freedom of speech, and, therefore, protected conduct under the First Amendment. See Sec. Am. Compl. It is well-settled in this Circuit that an inmate has the "right to the free flow of mail." Arnold v. Perez, No. 3:12-CV-1677 (VLB), 2013 WL 1196677, at *2 (D. Conn. Mar. 22, 2013) (citing Davis, 320 F.3d at 351 (vacating and remanding the district court's granting of the motion to dismiss and stating that "a prisoner's right to the free flow of incoming and outgoing mail is protected by the First Amendment"). However, as this Court previously found, plaintiff was not disciplined for writing a letter; instead, he was disciplined because the letter contained language "perceived as a sexual threat against a prison employee, which is 'separate and distinct from [the plaintiff's] conduct in the exercise of free speech.'" See Dkt. No. 28 at 7 (quoting Allmon v. Wiley, No. 08-CV-01183, 2011 WL 4501941, at *8 (D. Colo. Aug. 25, 2011) aff'd,

9

483 F. App'x 430 (10th Cir. 2012) (holding that the plaintiff "suffered adverse action because he violated prison rules and attempted to file a fraudulent lien, not because he mailed a letter.")).  Threatening or otherwise inappropriate language does not constitute protected conduct or speech. See Doe v. Selsky, 973 F. Supp. 2d 300, 304 (W.D.N.Y. Sept. 20, 2013) (citations omitted) (concluding that "saying 'something nasty'" does not constitute protected speech); Chevalier v. Schmidt, No. 11-CV-788, 2012 WL 6690313, at *3 (W.D.N.Y. Dec. 21, 2012) ("Vulgar, insulting, and threatening statements have been found not to be protected speech for purposes of the First Amendment.").  Thus, the facts set forth in plaintiff's second amended complaint do not plausibly suggest that plaintiff's sexual comments regarding a female prison guard constitute protected speech under the First Amendment. See Jackson v. Onondaga Cnty., 549 F. Supp. 2d 204, 215 (N.D.N.Y. 2008) (citing Brooks v. Miles, 210 F. Supp. 2d 290 (S.D.N.Y. 2001) (noting that "profane" or disrespectful language spoken by an inmate against a prison guard is not protected under the First Amendment)).

Moreover, as this Court previously concluded, even if plaintiff's speech was protected by the First Amendment, "a prison facility has [a] legitimate penological interest in prohibiting such conduct, as permitting the use of sexual language or discussion of sexual desires relating to a prison employee could pose a risk to that employee or others." Dkt. No. 28 at 8 (citing Chevalier, 2012 WL 66903313, at *3 ("Legitimate penological interests in rehabilitation and preserving institutional authority permit prison officials to discipline inmates who engage in harassing and insulting behavior even when inmates are taking part in otherwise protected activities.")).  Insofar as plaintiff claims that his

statements were not threatening because they were not "geared toward [Officer Ferland] directly or indirectly," plaintiff's "personal belief that his written states were not threatening, does not suffice to state a retaliation claim." Riddick v. Semple, No. 3:18-CV-408 (SRU), 2018 WL 2926303, at *3 (D. Conn. June 7, 2018) (citing cases).

In opposition, plaintiff suggests for the first time that the sexual language in the March 5, 2015 letter depicted "how he felt towards some of the women that he met on the PrisonPenPals.com internet," and there is no evidence that plaintiff signed a confession statement admitting that he was referencing Officer Ferland. Pl. Opp. at 1-2. The undersigned again notes that plaintiff "do[es] not have a constitutionally protected right to use inappropriate, disrespectful, and derogatory language." Rollins v. Kerestes, No. 13-7473, 2015 WL 418154, at *2 (E.D. Pa. Jan. 30, 2015) (citing cases). Further, it has been held that an inmate has not engaged in protected conduct and cannot state a First Amendment claim where his or her conduct violates a prison regulation. See Shaheen v. McIntyre, No. 9:05-CV-0173, 2007 WL 3274835, at *10 (N.D.N.Y. Nov. 5, 2007) ("[I]t is rather well settled that '[t]he violation of a prison regulation . . . is not protected conduct.'") (citation omitted). As plaintiff's placement in SHU was premised on his violation of Code 206 – denoting that "[m]aking sexual proposals or threats to another" is a "High Severity Level Prohibited Act[ ]" – his retaliation claim cannot stand. To the extent that plaintiff references in his opposition papers that his disciplinary charge was expunged from his record, the undersigned noted in the July 6, 2017 Report-Recommendation and Order that the expungement was irrelevant to plaintiff's retaliation claim, as plaintiff "was not engaged in constitutionally-protected conduct at the time of the alleged adverse actions." Dkt. No.

11

28 at 9 n.7.

Insofar as plaintiff suggests that Capt. Phelps threatened that plaintiff would receive an incident report and would be subject to a disciplinary transfer because of the letter, verbal harassment or threats are generally not considered adverse action for the purpose of a First Amendment retaliation claim. Marrero v. Kirkpatrick, No. 08-CV-6237 (MAT), 2012 WL 2685143, at *7 (W.D.N.Y. July 6, 2012) (citing Rosales v. Kikendall, 677 F. Supp. 2d 643, 648 (W.D.N.Y. 2010)) (additional citation omitted). Moreover, it is clear that plaintiff was disciplined for the sexually threatening language used in the March 5, 2015 letter — not for writing the letter itself. See supra. As such, Capt. Phelps' alleged statement that plaintiff would likely face consequences for a rule violation does not constitute a verbal threat.

As plaintiff has failed to plausibly suggest that Capt. Phelps retaliated against him it is recommended that defendant's motion to dismiss on this ground be granted.

### C. Fourteenth Amendment

Capt. Phelps argues that plaintiff fails to adequately plead that Capt. Phelps deprived him of a protected liberty interest without due process "for the reasons discussed at length by this Court." See Def. Mem. of Law at 11. The Due Process Clause of the Fourteenth Amendment states: "[n]o State shall . . . deprive any person of life, liberty, or property without due process of law." U.S. CONST. amend. XIV § 1. To state a prima facie due process claim, "a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process."

12

Giano v. Selsky, 238 F.3d 223, 225 (2d Cir. 2001) (citation and quotation marks omitted); see Mitchell v. Keane, 974 F. Supp. 332, 342 (S.D.N.Y. 1997) ("To state a procedural due process claim challenging a disciplinary action, a prisoner must allege *both* that he was deprived of a liberty interest cognizable under the Due Process Clause, and that he was deprived of that interest without the requisite [procedural due] process.") (emphasis added).

### 1. Liberty Interest

An inmate has a protected liberty interest in being free from segregated confinement but only where the alleged deprivation imposed amounts to an "atypical and significant hardship in relation to the ordinary incidents of prison life." Sandin v. Connor, 515 U.S. 472, 483-84 (1995). "Factors relevant to determining whether the plaintiff endured an 'atypical and significant hardship' include 'the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions' and 'the duration of the disciplinary segregation imposed compared to discretionary confinement.'" Davis v. Barrett, 576 F.3d 129, 133 (2d Cir. 2009) (quoting Sandin, 515 U.S. at 484); see Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir. 1999) (quoting Sandin, 515 U.S. at 486) ("Although there is no bright-line rule regarding the length or type of sanction that would give rise to an 'atypical and significant hardship,' this standard will not be met unless the disciplinary and administrative sanctions are onerous."). The Second Circuit has provided a general guideline: "[w]here the plaintiff was confined for an intermediate duration — between 101 and 305 days — 'development of a detailed record' of the conditions of confinement

relative to ordinary prison conditions is required." Palmer v. Richards, 364 F.3d 60, 64-65 (2d Cir. 2004) (quoting Colon, 215 F.3d at 232)).  In the absence of a dispute about the conditions of confinement, the court may resolve the Sandin issues "as a matter of law." Id. at 65 (citations omitted). Conversely, where an inmate is confined under normal SHU conditions for a duration in excess of an intermediate disposition, the length of the confinement itself generally is sufficient to establish atypicality.  Id. (citing Colon, 215 F.3d at 231-32).

Plaintiff contends that he was held in "isolated confinement" for eighty-nine days — less than the "intermediate duration of time" set forth by the Second Circuit.[3]  See Palmer, 364 F.3d at 64-65; Borcsok v. Early, 299 F. App'x 76, 78 (2d Cir. 2008) (summary order) ("Even if we include the eleven days that [the plaintiff] spent in the SHU before the disciplinary hearing with the ninety days he received as part of his penalty, the duration of his confinement was neither atypical nor significant."); Jackson, 549 F. Supp. 2d at 218 (dismissing the plaintiff's procedural due process claim  where the plaintiff alleged he was confined to SHU for 49 days and experienced conditions normally associated with SHU). Thus, the length of plaintiff's SHU confinement alone does not set forth a constitutional violation.  Assessment of the conditions of confinement is necessary to determine whether plaintiff had a protected liberty interest.

Plaintiff contends that he was "isolated" for eighty-nine days in SHU.  Sec. Am.

---

[3] This Court has noted that "'based upon the facts set forth in the complaint, the only period attributable of segregated confinement, if at all, to defendants [Phelps] and Shipman is the period of time that [plaintiff] spent in SHU awaiting his disciplinary hearing – a period of 17 days." Dkt. No. 28 at 12 n.9 (quoting Dkt. No. 6 at 11)).

Comp. at 5. Plaintiff's allegations, without more, do not establish a liberty interest as plaintiff does not allege that he suffered conditions atypical to that of ordinary prison conditions. See Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir. 1996) (explaining that although prisoners in SHU may be deprived of "certain privileges that prisoners in the general population enjoy," there exists no liberty interest in remaining a part of the general prison population); cf. James v. Gage, No. 15-CV-106 (KMK), 2018 WL 2694436, at *15 (S.D.N.Y. June 5, 2018) (finding that the plaintiff demonstrated a liberty interest where he "was allegedly isolated in the infirmary without clothing and pain medication and . . . the ess[ ]ential necessities.") (internal quotation marks and citation omitted); Smith v. Hamilton, No. 9:15-CV-0496 (BKS/ATB), 2016 WL 3823395, at *3-4 (N.D.N.Y. July 12, 2016) (denying the defendants' motion to dismiss where the plaintiff alleged that he was confined to sixty foot square cell for twenty-three hours a day, and, in part, deprived of his personal property). Thus, the undersigned concludes that plaintiff has not established an atypical and significant hardship. Therefore, he has failed to establish a protected liberty interest in his period of SHU confinement.

## 2. Procedural Due Process

Even assuming, *arguendo*, that plaintiff had sufficiently pleaded a protected liberty interest, he has failed to demonstrate that Capt. Phelps "deprived him of that interest as a result of insufficient process." Giano, 238 F.3d at 225. Although inmates retain their constitutional right to due process protections, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the fully panoply of rights due a defendant in such

proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974); see also Arce v. Walker, 139 F.3d 329, 335 (2d Cir. 1998) (holding that an inmate is entitled to minimal due process protections when being involuntary placed in administrative confinement).

> Certain due process protections therefore apply where disciplinary proceedings may lead to the loss of good time credit or would subject an inmate to solitary confinement in the SHU. Inmates are entitled to advance written notice of the charges; a fair and impartial hearing officer; a reasonable opportunity to call witnesses and present documentary evidence; and a written statement of the disposition, including supporting facts and reasons for the action taken.

Luna v. Pico, 356 F.3d 481, 487 (2d Cir. 2004) (citation omitted). Plaintiff does not claim that Capt. Phelps presided over the March 23, 2015 disciplinary hearing. Moreover, as this Court previously held, there is no indication that plaintiff suffered any constitutional deprivation as a result of the March 23, 2015 hearing, as plaintiff has not alleged that he received inadequate notice, that he was denied an opportunity to be heard at the hearing that he was precluded from presenting witnesses or evidence, or that the statement of disposition was not supported by some evidence. See Dkt. No. 28 at 13; see generally Sec. Am. Compl. Thus, plaintiff fails to sufficiently plead that Capt. Phelps violated his Fourteenth Amendment procedural due process rights. Accordingly, as plaintiff failed to plausibly plead that he was deprived of a liberty interest, and that Capt. Phelps deprived him of that interest without the requisite process, see Mitchell, 974 F. Supp. at 342, it is recommended that defendant's motion on this ground be granted.[4]

---

[4] The undersigned declines to address defendant's alternative argument concerning personal involvement in light of the recommendation to dismiss the second amended complaint.

16

## D. Qualified Immunity

Capt. Phelps argues that even if plaintiff's claims are substantiated, he is still protected by qualified immunity. See Def. Mem. of Law at 11-12. Qualified immunity shields public officials from being sued for conduct undertaken in the course of their duties so long as that conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (internal quotation marks and citation omitted); Eng v. Coughlin, 858 F.2d 889, 895 (2d Cir. 1988). However, even if the constitutional privileges "are so clearly defined that a reasonable public official would know that his actions might violate those rights, qualified . . . immunity might still be available . . . if it was objectively reasonable for the public official to believe that his acts did not violate those rights." Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted). A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation. See Saucier v. Katz, 533 U.S. 194, 201 (2001). Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation. See Aiken v. Nixon, 236 F. Supp. 2d 211, 230 (N.D.N.Y. 2002).

Here, plaintiff has not established a constitutional violation to satisfy the first prong of the qualified immunity test. See subsection II.B.-C. supra. Because there is no constitutional violation, the undersigned does not reach whether plaintiff's constitutional rights were clearly established at the time of the alleged violation. See Aiken, 236 F. Supp. 2d at 230. Accordingly, it is recommended that defendant's motion on this ground be

granted.

### III. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby:

**RECOMMENDED**, that defendant's' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. No. 34) be **GRANTED**; and it is further

**RECOMMENDED**, that plaintiff's second amended complaint (Dkt. No. 21) be **DISMISSED** in its entirety, with prejudice; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

 **IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED R. CIV. P. 6(a), 6(e), 72.[5]

Dated: July 31, 2018
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[5] If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(C).